**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

United States of America,

    Plaintiff,

Case No. 08-20130

v.

HONORABLE DENISE PAGE HOOD

Dennis W. Delaney,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion to Suppress Statements [Dkt. #9, filed February 19, 2008]. The Government filed a response on March 25, 2008. Defendant filed a Reply on March 28, 2008.[1] A hearing on the Motion was held on April 8, 2008.

**II. FACTS**

    A.    <u>Briefs</u>

Defendant Dennis William Delaney was arrested on January 17, 2008, and charged with several violations of 18 U.S.C. §§ 2251, 2252A. Count I of the Indictment alleges a violation of 18 U.S.C. § 2251(a) (Sexual Exploitation of Children). Count II of the Indictment alleges a violation of 18 U.S.C. § 2252A(a)(1) (Distribution of Child Pornography). Count III of the Indictment alleges a violation of 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography).

In his Motion, Defendant alleges a violation of his Fifth and Sixth Amendment rights. He

---

[1] The Response and Reply were filed under case number 08-30027.

alleges that the arresting agents failed to advise him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (Def.'s Mot. To Suppress at ¶ 5.) Defendant also alleges that despite his repeated requests to arresting agents to contact and to speak with his attorney, he was not permitted to do so, and the agents continued with their questioning of him in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). (*Id.* at ¶ 8-14.) As relief for these constitutional violations, Defendant seeks to suppress "all oral and written statements made during and subsequent to his arrest prior to speaking with counsel." (*Id.* at ¶ 27.)

B. Testimony

The Court heard testimony from three witnesses at the April 8, 2008 hearing. The Court first heard testimony from Secret Service Agent Erik Clark. Agent Clark's testimony was followed by that of Secret Service Agent Michael Ebey. Defendant then testified.

i. *Agent Michael Ebey*

Agent Ebey testified that he was the first officer to enter the front door of Defendant's house on January 17, 2008. Ebey grabbed Defendant's wrist and ordered Defendant to drop to the floor. Ebey handcuffed Defendant and informed Defendant that he was under arrest. Ebey was not the lead agent on the case at the time of Defendant's arrest. Ebey had been recruited by Agent Clark to participate in the arrest. At the time of Defendant's arrest, Ebey did not know if Clark was in possession of Defendant's arrest warrant.

After Defendant's arrest, Agents Ebey and Clark drove Defendant to the Secret Service post for processing. Ebey was the driver and Clark rode in the front passenger seat. They left Defendant's home at approximately 1:49 p.m. on January 17, 2008. Before leaving Defendant's home, Defendant told his wife to call his mother. Ebey testified that Defendant was Mirandized by

Clark within five minutes of the drive to the post. Ebey further testified that Defendant did not ask to speak with an attorney at Defendant's home or during the car ride to the post.

During cross examination, Ebey recalled Clark's discussion with Defendant about how Defendant could improve the outcome of his subsequent prosecution with "cooperation points" if Defendant cooperated with the agents. Ebey denied that Defendant was promised that he could go home the same day of his arrest if he cooperated with the agents. Ebey also denied that he threatened Defendant's well-being while they were at the post. Ebey did not recall Defendant's use of the word "lawyer" at the post.

  ii. *Agent Erik Clark*

Agent Clark testified that he was present during Defendant's arrest, along with approximately four or five other agents. He testified that he and Ebey remained at Defendant's home for no more than ten minutes after they arrested Defendant and departed for the post. Before they escorted Defendant out of his home, Clark recalled that Defendant asked his wife to call his mother.

Clark testified that during the drive to the post, he read to Defendant the *Miranda* rights listed on the *Miranda* card in his wallet, which was issued by the Secret Service. Clark read the *Miranda* card during his testimony.

Clark testified that Defendant stated he understood the *Miranda* rights. Clark further testified that although Defendant did not initially respond when asked whether or not he wished to

3

speak to the agents, Defendant began speaking with the agents approximately twenty seconds later. Defendant admitted to using a Yahoo internet account to transmit nude images of a young female identified as V-1. Defendant also admitted to meeting V-1 in 2003, taking nude pictures of V-1, and having sexual relations with V-1.

Clark indicated that he and Ebey arrived at the post with Defendant around 2:20 p.m. on January 17, 2008. They remained at the post for approximately 45 minutes, until Defendant made his appearance in duty court at approximately 3:00 p.m. During the time spent at the post, Clark testified that Defendant never asked for a lawyer or expressed a desire to stop talking. Clark further testified that Defendant was not intoxicated during the time they questioned Defendant.

While at the post, Clark and Ebey presented Defendant with his arrest warrant. They also read to Defendant Secret Service *Miranda* Warning Form 47. Thereafter, Defendant was permitted to read Form 47 himself. Defendant signed Form 47 at 2:44 p.m., despite initial reticence.

Clark testified that he discussed the topic of "cooperation points" with Defendant, both in the car and at the post. In a nutshell, these conversations stressed the importance of Defendant's truthfulness in answering the questions of the agents. Clark testified that although Defendant did not explicitly ask to speak with a lawyer, Defendant did ask Clark if Clark thought it was necessary for Defendant to speak with a lawyer.

During cross examination, Clark indicated that during his arrest of Defendant, he was aware of Defendant's prior arrest by the Macomb County Sheriff's Department. The Macomb County

arrest, conducted by Detective Linda Findlay of the Macomb County Sheriff's Department, arose from Defendant's alleged attempt to have sex with a minor in Macomb County. Clark indicated that he was unaware of the status of the Macomb County case. Clark also indicated that Defendant mentioned the name of his Macomb County case lawyer while at the post.

As to Clark's discussion with Defendant about "cooperation points," Clark acknowledged that Defendant was probably unfamiliar with any such point system and that Defendant probably learned about the system for the first time from Clark. Clark admitting to telling Defendant that Defendant could gain "cooperation points" by signing the *Miranda* Form 47.

       iii.      <u>*Defendant Dennis Delaney*</u>

Defendant testified that he told agents several times on January 17, 2008 that he wished to speak to his lawyer. Defendant made at least two requests at his home. Defendant made the first request while being handcuffed, but was not permitted to use the phone. Defendant made a second request when he instructed his wife to call his mother and lawyer. Before being escorted from his home, Defendant reminded his wife to tell his mother to contact his lawyer.

Defendant indicated the he asked for an attorney three times during the drive to the post. On one of those occasions, Defendant indicated to Clark and Ebey that he thought that he should talk to his attorney. Nevertheless, the agents continued their questioning, and told Defendant that he would have plenty of time to speak with his attorney.

During the drive to the post, Defendant testified that Clark did not read from a *Miranda* card.

5

Instead, Clark began explaining the cooperation point system. Clark indicated to Defendant that the more cooperation points Defendant earned, the better off Defendant would be. Defendant described the explanation of the cooperation point system as "abbreviated" *Miranda* rights.

Defendant testified that he received no water while at the post. He also indicated that he was not permitted to use the phone. Defendant indicated that he signed a *Miranda* Form 47, but that the form was blank when he signed it. The form he signed was the second such form that the agents presented to him. When he hesitated in signing the first *Miranda* Form 47 presented to him, Defendant testified that one the agents wrote "refused" on it, threw it away, and said to Defendant, "there goes your cooperation points."

Defendant indicated that Ebey threatened Defendant while at the post with a handgun magazine. According to Defendant, Ebey indicated that if V-1 had been his child, Defendant would have been going to the morgue instead of to duty court.

On cross examination, Defendant indicated that he was 37 years old at the time of his January 17, 2008 arrest. He also indicated that he had completed a GED program, in addition to several college-level courses. Defendant admitted that he was not injured during his arrest and subsequent interrogation. Although Defendant indicated that his lack of knowledge prevented him from remaining silent during the car ride, he also indicated that he knew that he would be permitted to speak with an attorney at some point. He decided to cooperate with the agents because he believed that cooperation with the agents would improve the outcome of his arrest and subsequent

prosecution. He indicated that he was "new" to being arrested and that he had never been made aware of his Miranda rights – even during the arrest for his Macomb County case.

## III. STANDARD OF REVIEW & APPLICABLE LAW

In *Miranda*, the Supreme Court held that criminal suspects in custody may not be interrogated until they have been advised of their rights, including the privilege against self-incrimination and the right to counsel. 384 U.S. at 478-79. More specifically, the Court held that a suspect:

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

*Id.* at 479.

A defendant can waive his *Miranda* rights, if the waiver is voluntary, knowing, and intelligent. *Id.* at 444. The test for waiver has two parts:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Colorado v. Spring*, 479 U.S. 564, 573 (1987).

The state bears the burden of proving that a defendant "voluntarily, knowingly, and intelligently waived his right to silence and counsel." *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (citing *United States v. Bentley*, 726 F.2d 1124, 1126 (6th Cir.1984)). An involuntary confession may result from psychological or physical coercion by law enforcement officials. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). In determining whether a confession has been elicited by means that are unconstitutional, courts must look at the totality of the circumstances and ultimately determine whether a defendant's will was overborne. *Id.* Factors to consider in assessing whether the defendant's will was overborne include the defendant's age, education, and intelligence; whether the defendant has been informed of his constitutional rights; the length of his questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. *Id.*

The fear of extraneous adverse consequences may suffice to overcome a defendant's will; however, fear of ultimately being convicted of the crime will not suffice to overcome a defendant's will. *See id.* at 1070. Outrageous forms of psychological coercion that can overcome a defendant's will may include, for example: subjecting a defendant to four hours of questioning while he is incapacitated and sedated in an intensive-care unit; 2) interrogating a defendant, who is on medication, for over eighteen consecutive hours without providing him with food or opportunity to sleep; 3) holding a gun to a defendant's head; 4) holding a defendant incommunicado for three days with little food, and then extracting his confession by warning him that the chief of police is

8

preparing to admit a lynch mob into the jail to fetch him; and 5) questioning a defendant by alternating officers for thirty-six consecutive hours, without allowing him to sleep. *Id.* at 1067 n.5.

According to *Edwards* and its progeny, an accused in police custody who has invoked his Fifth Amendment right to counsel is protected from further police questioning so long as the accused himself does not initiate further communication, exchanges, or conversations with the police. *Fautenberry v. Mitchell*, 515 F.3d 614, 630 (6th Cir. 2008) (quotations, citations and brackets removed); *see also Van Hook v. Anderson*, 488 F.3d 411, 415 (6th Cir. 2007) (en banc ). To invoke the protections of *Edwards*, a suspect in custody must "unambiguously request counsel." *Van Hook*, 488 F.3d at 414 n.1 (citing *Davis v. United States*, 512 U.S. 452, 458 (1994)).

The *Edwards* rule "is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Van Hook*, 488 F.3d at 416. The *Edwards* rule requires a two-part inquiry:

> First, courts must determine whether the accused actually invoked his right to counsel[.] Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Id.* Statements elicited in violation of the *Edwards* rule must be suppressed.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. *United States v. McAuliffe*, 490 F.3d 526, 539 (6th Cir. 2007). "Once the Sixth Amendment right attaches, any governmental attempt to elicit

9

information from the accused without the defendant's lawyer present, even through means that may be permissible under the Fifth Amendment right to counsel prior to the point at which the Sixth Amendment right to counsel attaches . . . is prohibited." *Id.* The Sixth Amendment right to counsel is offense-specific and does not attach until a prosecution has commenced. *Id.* Moreover, the Sixth Amendment right to counsel cannot be invoked once for all future prosecutions. *Id.*

## IV. ANALYSIS

During closing arguments, the Government argued that neither of Defendant's constitutional claims merits the suppression of his statements. As to Defendant's Fifth Amendment *Miranda* claim, the Government argued that Defendant voluntarily waived his *Miranda* rights, both during the drive from his home to the post and during his interrogation at the post. The Government indicated that Defendant was aware of his *Miranda* rights, could read and write, had taken college courses, was not subjected to physical harm, and was interrogated by federal agents for less than three hours.

As to Defendant's Sixth Amendment right to counsel claim, the Government argued that Defendant never requested an attorney during his arrest or interrogation. The Government further maintains that Defendant's invocation of his right to counsel in a separate Macomb County criminal state case did not preclude federal agents from questioning Defendant – outside of the presence of Defendant's state case attorney – about Defendant's federal charges

During closing arguments, Defendant maintained that he was misled by the agents as to when

10

he could see his attorney and how his cooperation would affect the outcome of his bond hearing. He argued that the Government offered no proof that he was given his *Miranda* rights during the car ride, other than the agents' testimony. He also questioned the timing of events with respect to his signing of *Miranda* Form 47. The form was signed at 2:44 p.m. However, he appeared in duty court at approximately 3:00 p.m.

  A.  <u>Fifth Amendment Claim</u>

Based upon the evidence contained in the record, the Court concludes that Defendant's incriminating statements were not elicited through the use of means which impinged upon the Fifth Amendment. This conclusion accounts for Defendant's age, education, and intelligence; the length of his questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. *Ledbetter*, 35 F.3d at 1067.

Here, the record demonstrates that Defendant is a literate adult male of average intelligence. The record also demonstrates that the nature and length of Defendant's interrogation were not outrageous and coercive such that his will was overborne. *Id.* Defendant was interrogated for less than three hours and suffered no injuries during the interrogation. Although Defendant testified that he was not provided with water during his three hour interrogation, the case law suggests that a three-hour deprivation of water is not an outrageous form of psychological coercion. *Id.* at 1070 n.5. Further, the Court finds credible the agents' testimony that Defendant was informed of his *Miranda* rights during the drive to the post. To the extent that he was not fully informed of his *Miranda* rights

by Agent Clark, the record demonstrates that Defendant "had prior experience with the criminal justice system and was sufficiently intelligent to appreciate the lessons of that experience." *Id.* at 1062. Accounting for the totality of the circumstances, the Court holds the Defendant's statements were obtained by means of legitimate law-enforcement methods that withstand constitutional scrutiny. Defendant's fear of ultimately being convicted of the crime for which he was charged cannot serve to suppress his incriminating statements. *Id.* at 1070.

      B.      <u>Sixth Amendment Claim</u>

Based upon the evidence contained in the record, the Court also concludes that Defendant's incriminating statements were not elicited through the use of means which impinged upon the Sixth Amendment. Although Defendant makes much of the fact he had a lawyer for his Macomb County case at the time of his January 17, 2008 arrest by the federal agents, the Sixth Amendment right to counsel is offense-specific and does not attach until a prosecution has attached. *McAuliffe*, 490 F.3d at 539. Accordingly, federal agents were not prohibited from interrogating Defendant about his federal charges with respect to V-1.

The federal agents also satisfied the provisions of *Edwards* during Defendant's arrest. The *Edwards* rule "is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Van Hook*, 488 F.3d at 416. To invoke the protections of *Edwards*, a suspect in custody must "unambiguously request counsel." *Van Hook*, 488 F.3d at 414 n.1. The remark, "Maybe I should talk to a lawyer," is not unambiguous. *Ledbetter*, 35 F.3d 1070. Here,

12

Defendant's assertion that he unambiguously requested counsel on seven occasions is not credible. Morever, the Court finds that Defendant's "I don't think that I should be saying anything without my lawyer" comment, which he proffered at the April 8, 2008 hearing as an example of one of his requests for counsel, was not an unambiguous request for counsel. Defendant's comment is very similar to the, "Maybe I should talk to a lawyer," comment discussed in *Ledbetter*, which was also determined not to be an unambiguous request for counsel. 35 F.3d at 1070. Defendant's comment therefore failed to invoke the protections of the Sixth Amendment.

## V. CONCLUSION

In light of the foregoing,

IT IS ORDERED that Defendant's Motion to Suppress Statements [Dkt. #9, filed February 19, 2008] is **DENIED**.

    S/Denise Page Hood
    Denise Page Hood
    United States District Judge

Dated: June 6, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 6, 2008, by electronic and/or ordinary mail.

    S/William F. Lewis
    Case Manager